UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

D.S.S., et al.                                                      PLAINTIFFS

vs.                                          CIVIL ACTION NO. 3:20-CV-248-CRS

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA AND TIME WARNER CABLE                        DEFENDANTS

## MEMORANDUM OPINION

On February 26, 2020, Plaintiffs, D.S.S., by and through his next friend and custodian, Quintina McDowell ("McDowell"), and Javey Brown ("Brown"), filed a lawsuit in Jefferson County Circuit Court seeking the full amount of their mother's, Jacinta Malone ("Malone"), life insurance proceeds. DN 1-1. Defendant, Prudential Insurance Company of America ("Prudential"), removed the action to our Court. DN 1.

This matter is before the Court on Prudential's motion to dismiss. DN 22, 22-1. Plaintiffs filed a response to Prudential's motion. DN 31. Prudential then filed a reply to the response. DN 43. The matter is now ripe for review.

For the reasons stated herein, Prudential's motion to dismiss will be granted.

## I. BACKGROUND

Malone passed away in a tragic incident on March 18, 2014. DN 31 at 1. At the time of her death, she worked for Time Warner Cable Enterprises LLC ("Time Warner"). DN 19 at 2. As part of her employment, she participated in an employee welfare benefit plan (the "Plan") sponsored by Time Warner.[1] DN 31 at 1. Under the Plan, Malone received life insurance coverage of

---

[1] Malone's ERISA Plan appears to be detailed in two documents: (1) "Time Warner Cable Benefits Plan" and (2) a document with Prudential's logo entitled "Time Warner Cable Enterprises LLC." DN 22-2, 22-4.

$147,000—$88,000 of basic life insurance and $59,000 of optional life insurance. DN 19 at 3, 22-3 at 2. Prudential served as the Plan's claims administrator. DN 22-1 at 12.

The Time Warner Cable Benefits Plan states that an employee must "designate a beneficiary with the TWC Benefits Service Center naming the individual(s) . . . who will receive benefits if [the employee] die[s] while [] coverage is in effect." DN 22-2 at 92.  The document also describes the division of proceeds, the possibility to name more than one beneficiary, an employee's ability to designate a beneficiary online or through a beneficiary designation form, and the option to change a beneficiary. DN 22-2 at 92-93. Similarly, the document with Prudential's logo states that an employee has "the right to choose a beneficiary." DN 22-4 at 38. This document also explains that an employee may change a named beneficiary at any time, the change must be "filed through the Contract Holder," and any change would "take effect on the date the form is signed." DN 22-4 at 38. It is undisputed that, as of February 6, 2014, D.S.S. and Brown were named as Malone's primary beneficiaries. DN 19 at 3, 22-1 at 3, 31-2 at 2.

Following Malone's death, Prudential communicated with Time Warner to determine the individual(s) designated as Malone's beneficiary. DN 22-1 at 7, 22-3 at 2, 43 at 13. Apparently, these communications revealed that D.S.S. and Brown were no longer Malone's primary beneficiaries. DN 22-1 at 3, 43 at 13. According to Prudential, "[o]n February 7, 2014, [] Malone . . . changed the beneficiary designation for her life insurance benefits from Plaintiffs to [] Malone's aunt, Tiffani Q. Graves." DN 22-1 at 1, 3.

Prudential then contacted Tiffani Graves ("Graves") to begin the necessary steps before it could distribute Malone's life insurance proceeds. DN 22-1 at 4, 22-5 at 2-4. Prudential approved the payment of Malone's life insurance proceeds to Graves in June 2014. DN 22-5 at 3.

2

McDowell was appointed as the Administratrix of Malone's estate in November 2014. DN 31-2 at 2. On December 15, 2014, McDowell called Prudential to ask whom Malone named as her life insurance beneficiary. DN 22-6 at 6. She was advised that Prudential was "not at liberty to discuss who [the] claim was paid out to." DN 22-6 at 6. She requested a "call back . . . to discuss [the] claim." DN 22-6 at 6. A Prudential employee called McDowell a few hours later and reaffirmed that Prudential could not advise whom Malone named as her beneficiary, but that the "claim [for benefits] was approved on June 13, 2014." DN 22-6 at 6. This employee also informed McDowell that Prudential would mail to her Internal Revenue Service ("IRS") Form 712, which includes the name of a policy's beneficiary, if McDowell sent Malone's estate documents to Prudential.[2] DN 22-6 at 6.

McDowell received Form 712 on December 31, 2014. DN 31 at 6, 31-3 at 5-6. Form 712 evidences that Graves was Malone's only beneficiary; however, the document does not indicate when Malone's named Graves as her beneficiary. DN 31 at 6, 31-3 at 5-6.

On April 9, 2015, McDowell called Prudential to continue her quest to determine whom Malone named as her beneficiary and when Malone's beneficiary designation was changed. DN 22-6 at 5. Prudential informed McDowell that they "could not verify who the bene [sic] is." DN 22-6 at 5. McDowell called Prudential the following day and was advised that "[Prudential] cannot verify bene [sic] info [sic] due to privacy acts" and to "[c]ontact Time Warner Cable in regards to inquires on beneficiary designation changes." DN 22-6 at 4. Two weeks later, McDowell contacted Prudential with the same inquiry and was again told "to contact TWC as we did not handle benes [sic]." DN 22-6 at 3.

---

[2] Prior to McDowell's phone conversation with Prudential on December 15, 2014, she emailed Prudential requesting IRS Form 712. DN 22-5 at 2. Form 712 is filed by executors with other tax forms to report the value of a life insurance policy's proceeds for estate tax purposes.

McDowell resumed her investigation on September 2, 2015. DN 22-6 at 3, 31-2 at 2. During that inquiry, a Prudential employee informed McDowell that they "did not have [] information" on when the Plan's beneficiary designation was changed and advised her "to contact Time Warner benefits." DN 22-6 at 3, 31-2 at 2. The following day, McDowell called Prudential "to inquire when [Malone's] file was initiated in our system." DN 22-6 at 2, 31-2 at 3. She was informed that the file originated on "03/24/2014" and that Prudential did "not have the date the insured changed the beneficiary." DN 19 at 3, 22-6 at 2, 31-2 at 3.

Later in September 2015, McDowell received a fax from Prudential detailing information regarding "the changes made by Jacinta Malone's beneficiary designation." DN 22-8 at 2-8, 31-3 at 9-14. This document reveals that Graves was Malone's primary beneficiary and that D.S.S. and Brown were secondary beneficiaries. DN 22-8 at 4-6, 31-3 at 10-12. It also confirms that as of February 6, 2014, Plaintiffs had been the only beneficiaries. DN 22-8 at 7-8, 31-3 at 13-14. The documents do not reveal when Graves became a beneficiary.

Approximately two years later, Chris Meinhart, the court appointed Successor Administrator of Malone's estate, sent Prudential a letter requesting that Prudential "provide a complete copy of the most current beneficiary designation dated 03/26/2014 along with documentation of how the beneficiary designation was received." DN 31-3 at 15. Prudential responded that March 26, 2014, was "[t]he date on the beneficiary designation [that] the employer forwarded the case file to us . . . ." DN 31-3 at 17. Displeased with Prudential's response because it did not include the beneficiary change form, Meinhart wrote Prudential again requesting that they "provide a complete copy of the last beneficiary designation form completed by Jacinta Malone prior to her death on 3/18/14." DN 31-3 at 18. It is not clear whether Prudential responded.

4

It should be noted that Malone's Plan states that a claim for benefits must be "made in writing to the Claims Administrator within one year of the date the charges for the services were incurred." DN 22-2 at 21. If the claims administrator denies a claim for benefits, it must provide adequate notice to the claimant. DN 22-2 at 21. Following the denial, a claimant may file a lawsuit; however, the Plan explains that "no legal action at law or equity to recover benefits under the Plan may be filed unless the claimant has complied with . . . the administrative procedures under [the Plan]," nor may legal action be filed more than one year after "the final adverse benefit determination." DN 22-2 at 21, 107.

## II. <u>LEGAL STANDARD</u>

A district court may not consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008); *see also J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86–87 (6th Cir. 2007). If, in a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Where "one party is likely to be surprised by the proceedings, notice is required," but generally, "[w]hether notice of conversion of a motion to dismiss to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998); *see also Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

Under the situation presented here, Prudential's motion to dismiss is converted into a motion for summary judgment. Prudential filed its motion to dismiss and attached two documents that encompass Malone's employee welfare benefit plan, along with numerous other documents evidencing communications with Time Warner, Graves, and McDowell. DN 22-2, 22-3, 22-4, 22-5, 22-6, 22-7, 22-8, Although the Plan documents are likely part of the pleadings, the other communications are not. If this Court considers the additional documents, Prudential's motion to dismiss should be treated as one for summary judgment under Rule 56. Thus, Prudential's motion to dismiss both introduced communications that are outside the pleadings and suggested that it could be converted into a motion for summary judgment.

Although Plaintiffs' response does not address the legal standard for converting a motion to dismiss into a motion for summary judgment, it states that "[Prudential's] Motion [sic] is in actuality one for summary judgment . . . ." DN 31 at 11. Plaintiffs did not, however, attempt to explain why this Court should not treat Prudential's motion as one for summary judgment. Plaintiffs also did not state that they needed any additional discovery or an opportunity to supplement the record. In fact, Plaintiffs attached documents outside the pleadings in response to Prudential's motion, including an affidavit from McDowell, a timeline of relevant events, and documentary evidence of communications between McDowell, Time Warner, and Prudential. DN 31-1, 31-2, 31-3. Thus, Plaintiffs had a reasonable opportunity to present additional material and to request discovery.

A party moving for summary judgment must demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue of material fact is genuine if a rational fact finder could find in favor of either party on the issue. *Id.* at 248.

In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party moving for summary judgment bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A party can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56 (c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. <u>ANALYSIS</u>

Upon removal, Plaintiffs filed an Amended Complaint. DN 19. They first allege that the life insurance proceeds were "wrongfully paid . . . to Graves." DN 19 at 3. Second, they claim that Prudential, Time Warner, or both "fraudulently concealed information and documentation concerning the claim." DN 19 at 4. Third, they argue that Prudential and Time Warner "breached fiduciary duties and committed bad faith." DN 19 at 4. Finally, they allege that "Prudential breached its contract, violated duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), and/or violated the Kentucky Unfair Claims Settlement Practice Act ("KUCSPA") contained in KRS 304.12-230." DN 19 at 4.

In their Response, Plaintiffs clarified that their Amended Complaint seeks relief under ERISA § 501(a)(1)(B) for wrongful payment and material misrepresentations, as well as

KUCSPA. DN 31 at 16-17. Plaintiffs specifically stated that they are not seeking relief under ERISA § 502(a)(3). DN 31 at 16. Thus, this Court will treat any claims for breach of fiduciary duty under § 502(a)(3) as abandoned.

### A.  Plaintiffs State Law Claim is Preempted by ERISA

Prudential contends that it cannot be liable to Plaintiffs for alleged violations of KUCSPA because ERISA preempts this claim. DN 22-1 at 13-17, 43 at 10-12. Plaintiffs attempt to defeat this argument by claiming that their claim under KUCSPA is not preempted, and, alternatively that their state law claim is valid under ERISA's savings clause. DN 31 at 16-17.

ERISA's express preemption clause states that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The United States Supreme Court has explained that ERISA's "pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (internal citation and quotation marks omitted).

A claim under ERISA § 502(a)(1)(B) will be preempted "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions . . . ." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). A state law claim "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97 (1983). A state law claim is independent of ERISA when the duty conferred was "not derived from, or conditioned upon, the terms of" the plan and there is no

"need [] to interpret the plan to determine whether that duty exists." *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013) (citing *Davila*, 542 U.S. at 210).

Even taking all reasonable inference in favor of the Plaintiffs, their claim under KUCSPA relates to Malone's employee welfare benefit plan because it arises from the alleged wrongful payment of life insurance proceeds to Graves and does not seek to correct any violation of a legal duty that is independent of ERISA. *See Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) ("claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law"). Although KUCSPA creates rights and obligations that an insured doing business in the Commonwealth of Kentucky must follow, it does not mean that a KUCSPA claim is independent of ERISA when the crux of a claim arises from an alleged violation of the rights and duties under an ERISA-governed policy. *See Howard v. Prudential Insurance Company of America*, No. 3:16-CV-00752-CRS, 2017 WL 1199759 at *4 (W.D. Ky. Mar. 30, 2017) (holing that plaintiff's KUCSPA claims that arose from an alleged wrongful denial of benefits of an ERISA regulated plan did "not seek to correct any violation of a legal duty that is independent of ERISA" and were completely preempted); *Milby v. Liberty Life Assurance Company of Boston*, 102 F. Supp. 3d 922, 934-35 (W.D. Ky. 2015) (claims under KUCSPA were completely preempted because the claims were based on administration of benefits claims and the duties allegedly breached only existed because of the ERISA-regulated plan); *Hanshaw v. Life Insurance Company of North America*, No. 3:14-CV-00216-JHM, 2014 WL 5439253 at *5-6 (W.D. Ky. Oct. 24, 2014) (holding that a state law contract claim did not arise independently of ERISA because the rights and obligations under the contract were established by an ERISA-regulated policy). As the Plaintiff's claims have a clear connection to Malone's employee welfare benefit plan and there

9

would be a need to interpret the Plan to determine whether a duty exists, Plaintiffs' claim is completely preempted by ERISA.

To defeat complete preemption, Plaintiffs argue that their KUCSPA claim falls under ERISA's savings clause. Following ERISA's preemption clause, the statute states, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of the state which regulates insurance." 29 U.S.C. 1144(b)(2)(A). However, ERISA's savings clause does not apply to state law claims that are subject to complete preemption. *See Davila*, 542 U.S. at 217-18 ("Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme"); *Traughber v. Sun Life Fin. (U.S.) Servs. Co*., No. 1:18-36, 2018 WL 6050875 (W.D. Ky. Nov. 19, 2018) ("all [KUCSPA] claims asserted by Plaintiff [against an ERISA fiduciary] arise from duties and obligations set out in Sun Life's ERISA-governed Plan.").

Plaintiffs rely heavily on *Harrison v. TEAMCARE-A Central States Health Plan*, 187 F. Supp. 3d 812 (W.D. Ky. 2016), to persuade this Court that its KUCSPA claim should not be dismissed. DN 31 at 16-17. In *Harrison*, the court initially ordered dismissal of the state law claims against Central States, the plan administrator, because they were completely preempted by ERISA. *Id.* at 815. Later, the court granted the plaintiff's motion to amend the court's order and held that the KUCSPA claims against Health Care Services Corporation ("HCSC") were not completely preempted because HCSC was not the plan administrator, did not owe fiduciary duties to the plaintiff, and the plaintiff could not have brought his claims against HCSC under ERISA's civil enforcement mechanisms. *Id*. However, the court held that the KUCSPA claims against Central States, the plan administrator, remained completely preempted. *Id*.

10

*Harrison* is distinguishable from the case at bar. Here, Plaintiffs asserted claims against Prudential, the plan administrator, for the wrongful payment of life insurance proceeds. Unlike HCSC, Prudential was the plan administrator for Malone's employee welfare benefit plan, acted as a fiduciary, and the Plan is subject to the civil enforcement mechanisms of ERISA. Thus, Plaintiffs' state law claim under KUCSPA is completely preempted, and not saved by ERISA's Savings Clause.

### B.  Plaintiffs' ERISA Claims are Time Barred

Prudential contends that Plaintiffs' claims under ERISA § 502(a)(1)(B) for benefits and material misrepresentation are untimely under the Plan's limitations provision. DN 22-1 at 7-11, 43 at 13-14. Plaintiffs argue that the cause of action did not accrue when McDowell learned the life insurance proceeds were paid to Graves because Prudential did not issue a claim denial, and Prudential failed to disclose documents evidencing Malone's beneficiary designation change. DN 31 at 13-15.

#### a.  Claim for Benefits

A participant in an employee benefit plan covered by ERISA may bring a civil action under § 502(a)(1)(B) to recover benefits due under the terms of the plan, enforce rights under the terms of the plan, or clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). ERISA does not provide a statute of limitations for a participant lawsuit to recover plan benefits. Instead a federal court will apply the most analogous statute of limitations under state law, typically the statute of limitations applicable under state contract law. *See Santino v. Provident Life & Acc. Ins. Co.,* 276 F.3d 772, 776 (6th Cir. 2001) ("Although ERISA does not provide a statute of limitations for benefit claims, this Court has noted that such claims are governed by the most analogous state statute of limitations . . ."). It is permissible, however,

11

for a court to apply a shorter limitations period that is contractually agreed upon in plan documents if the court finds that the time period is reasonable. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.,* 571 U.S. 99, 105–06 (2013) (upholding a plan provision imposing a three-year limitation period on a participant's right to file suit under ERISA Section 502(a)(1)(B), stating that "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable"); *Morrison v. Marsh & McLennan Companies, Inc*., 439 F.3d 295, 301 (6th Cir. 2006), (upholding a limitations provision in an ERISA plan that required an individual to bring a legal action within three years of the date his or her benefits were denied or the date the cause of action first accrued, if earlier); *Daniels v. Life Ins. Co. of N. Am*., No. 5:08-CV-137-R, 2009 WL 604128, at *2 (W.D. Ky. Mar. 6, 2009) (finding that a policy's three-year limitations period barred the plaintiff's claim, which was filed six years after the insurer denied plaintiff's claim for benefits). Although there is no clear standard of reasonableness, case law suggests that a one-year limitations period following a final denial of benefits is reasonable. *See Fetterhoff v. Liberty Life Assur. Co.*, 282 F. App'x 740, 744 (11th Cir. 2008) (upholding the district court's dismissal of the plaintiff's claim for benefits after finding the policy's agreed upon one-year limitations period applied); *Ford v. Premera Blue Cross*, No. C17-1738 MJP, 2018 WL 1620984, at *2 (W.D. Wash. Apr. 4, 2018) (finding that the parties "had a right to contract for a one-year limitations period, and that such a period is reasonable").

Malone's Plan states that a claim for benefits must be "made in writing to the Claims Administrator within one year of the date the charges for the services were incurred." DN 22-2 at 21. If the claims administrator denies a claim for benefits, it must provide adequate notice to the claimant. DN 22-2 at 21. Following the denial, a claimant may file a lawsuit; however, "no legal

12

action at law or equity to recover benefits under the Plan may be filed unless the claimant has complied with . . . the administrative procedures under [the Plan]," nor may legal action be filed more than one year after "the final adverse benefit determination." DN 22-2 at 21, 107. Because the contract's language clearly states that a claimant has one-year to bring a claim following an adverse benefit determination and Plaintiffs did not present arguments indicating that the limitations period is unreasonable, we find no reason to believe that the Plan's one-year contractual limitations provision is unreasonable.

Since we hold that the Plan's statute of limitations provision applies, we must determine the appropriate accrual date. Prudential argues that the limitations period began on December 15, 2014, when one of its employees informed McDowell that Malone's life insurance proceeds had been paid. DN 22-1 at 7-10, 43 at 8-10. Plaintiffs contend that the cause of action did not accrue because Prudential never issued a claim denial and did not provide documentation regarding Malone's alleged beneficiary designation change. DN 31 at 13-15.

The "discovery rule" governs when a cause of action under 29 U.S.C. § 1132(a)(1)(B) accrues. *Morrison*, 439 F.3d at 302 (6th Cir. 2006); *see also Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763 (6th Cir. 2017). Under the discovery rule, "the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Redmon v. Sud–Chemie Inc. Ret. Plan*, 547 F.3d 531, 535 (6th Cir. 2008). A claim under § 1132(a)(1)(B) does not accrue for the purpose of the statute of limitations upon the formal denial of benefits as Plaintiffs suggest. DN 31 at 13-14. Thus, a fiduciary's clear and unequivocal repudiation of benefits to a claimant, whether through formal or informal means, causes a claim to accrue for statute of limitations purposes. *Morrison*, 439 F.3d at 302 (6th Cir. 2006).

Here, McDowell began calling Prudential on December 15, 2014 to learn whom Malone named as her beneficiary. DN 22-6 at 6. She was told that Prudential was "not at liberty to discuss who [the] claim was paid out to," but learned that the life insurance proceeds were approved to be paid to someone on June 13, 2014. DN 22-6 at 6. During this conversation, the Prudential employee also informed McDowell that Prudential would mail her IRS Form 712 since she was the Administratrix of Malone's estate, which ultimately revealed that Graves was the only beneficiary. DN 22-6 at 6, 31-3 at 5-6.

Unsatisfied with Prudential's response or the information learned from Form 712, McDowell called Prudential several times in April 2015 to determine when Malone's beneficiary designation was changed. DN 22-6 at 4-6. Each time she was told by a Prudential employee that they could not verify who the beneficiary was and that she should contact Time Warner for inquiries regarding Malone's beneficiary change. DN 22-6 at 4-6.

These interactions also occurred on several occasions in September 2015. DN 22-6 at 2-3, 31-2 at 2-3. During these conversations, Prudential reminded McDowell to contact Time Warner to obtain answers regarding Malone's beneficiary designation change, but, on one occasion, informed McDowell that Malone's file originated on March 24, 2014 and that Prudential did not know when Malone changed her beneficiary designation. DN 22-6 at 2-3, 31-2 at 2-3. Later in September 2015, Prudential faxed McDowell a document listing Graves as the Plan's primary beneficiary and Plaintiffs as secondary beneficiaries. DN 22-8 at 2-8, 31-3 at 9-14.

Viewing the facts in light most favorable to the Plaintiffs, the accrual date occurred on December 31, 2014, at the latest. On December 15, 2014, Prudential clearly informed McDowell, who was acting as the Administratrix of Malone's estate and custodian of D.S.S, that

14

Malone's life insurance proceeds were paid on June 14, 2014. DN 22-6 at 6. Two weeks later, Malone received Form 712 from Prudential, which evidenced that Malone's life insurance proceeds were paid to Graves, rather than D.S.S. or Brown. DN 22-5 at 2, 31-3 at 5-6. Upon learning from Prudential that the life insurance proceeds were paid in June 2014 and then receiving confirmation that the proceeds were, in fact, paid to someone other than D.S.S. or Brown, the Plan's limitations period began to run because Plaintiffs discovered, or should have discovered, a clear repudiation of benefits. In the year that followed, Plaintiffs failed to file a written claim for benefits with Prudential. Plaintiffs also failed to file a lawsuit until February 2020, years after the Plan's limitations provision expired.

Plaintiffs do not argue that this Court should adopt a different accrual date or advance any related arguments. Plaintiffs also do not explain why they did not know or should not have known that they could have asserted a claim for benefits within one-year after learning that Malone's life insurance proceeds were paid to someone else. Instead, they contend that their cause of action did not accrue because Prudential failed to issue a formal claim denial and allegedly misrepresented Malone's beneficiary designation change.

These arguments are unpersuasive. Plaintiffs never filed a written claim for benefits, which would have triggered Prudential's obligation to formally notify them of a denial of benefits and afforded them a reasonable opportunity for a full and fair review of the decision to deny the claim. DN 22-2 at 21. Further, Prudential's alleged failure to provide documentary evidence of Malone's beneficiary designation did toll the limitations period from accruing because the Plaintiffs knew or should have known that they had a claim for the alleged wrongful payment of benefits after learning the benefits were paid to someone else.

15

Even assuming, arguendo, that the one-year limitations period under the Plan is unreasonable, Plaintiffs' claim for benefits still fails. The Sixth Circuit has held that "when a plaintiff seeks benefits under the plan and those claims depend on alleged violations of ERISA's statutory protections, Kentucky's five-year limitations period [under KRS 413.120(2)] applies." *Fallin v. Commonwealth Indus., Inc.*, 695 F.3d 512, 515 (6th Cir. 2012) (internal citation and quotation marks omitted). If a claim is based on the contract alone, then Kentucky's fifteen-year statute of limitations found in KRS 413.090(2) applies. *Redmon*, 547 F.3d at 537.

Here, Plaintiffs' claims are based on Prudential's alleged violation of ERISA § 502(a)(1)(B). As noted above, the accrual date occurred on December 31, 2014. On this date, Plaintiffs knew or should have known that they had a claim for the alleged wrongful payment of benefits because McDowell, acting as Administratrix and custodian of D.S.S., was informed that Malone's life insurance proceeds were paid to someone other than Plaintiffs and was able to confirm this information from Form 712. Even if we applied Kentucky's statutory limitations period under KRS 413.120(2) to the accrual date, Plaintiffs failed to file their lawsuit prior to the five-year expiration. Thus, Plaintiffs' claim for the alleged wrongful payment of benefits is untimely.

### b. Claim for Material Misrepresentation

Plaintiffs' claim under ERISA § 501(a)(1)(B) for material misrepresentation is also untimely. Plaintiffs failed to file their action within either the Plan's one-year time period or Kentucky's five-year limitations period after they knew or should have known they had a claim for the alleged material misrepresentation of Malone's beneficiary designation. The fact that McDowell and Meinhart requested documentation from Prudential detailing Malone's beneficiary designation change on several occasions throughout the past six years does not toll

the limitations period. In fact, Plaintiffs have not provided any case citations where the statute of limitations was tolled because the claims administrator declined to provide this documentation. Given that the Plaintiffs did not obtain documentary evidence of Malone's alleged beneficiary designation change before filing this lawsuit, there is no reason to believe that they could not have filed their claim within the applicable limitations period. Thus, Plaintiffs' claim for alleged material misrepresentations is untimely.

## V. <u>CONCLUSION</u>

For the reasons discussed herein, Prudential's motion to dismiss, which is being treated as a motion for summary judgment, will be granted by separate order.

November 20, 2020

Charles R. Simpson III, Senior Judge
United States District Court