UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

D.S.S., et al.                                                                                    PLAINTIFFS

vs.                                                                    CIVIL ACTION NO. 3:20-CV-248-CRS

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA AND TIME WARNER CABLE                                     DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiffs' motion to alter, amend, or vacate the Court's November 23, 2020 Order, which granted Prudential Insurance Company of America's ("Prudential") motion to dismiss. DN 51. Prudential filed a response to Plaintiffs' motion. DN 55. Plaintiffs then filed a reply. DN 56. The matter is now ripe for review.

For the reasons stated herein, Plaintiffs' motion will be denied.

**I. BACKGROUND**

This case arises in the context of life insurance proceeds that were paid by Prudential following the passing of Plaintiffs' mother, Jacinta Malone ("Malone"). The Court previously discussed the facts as they relate to Prudential. DN 45 at 1-5. Considering the parties' arguments differ regarding the controlling provisions of Malone's employee welfare benefit plan (the "Plan"), the Court will reiterate the necessary facts and elaborate further when necessary.

**A. Relevant Plan Terms**

At the time of her death, Malone was employed by Time Warner Cable Enterprises LLC ("Time Warner"). DN 19 at 2. As part of her employment, she participated in an ERISA plan. DN 19 at 2, 31 at 1. Under the Plan, Malone received life insurance coverage of $147,000—$88,000 of basic life insurance and $59,000 of optional life insurance. DN 19 at 3, 22-3 at 2. Prudential

served as the Plan's claims administrator and Time Warner operated as the Plan's plan administrator. DN 22-2 at 6, 22-4 at 49, 92.

The Plan includes: (1) a Written Instrument; (2) any documents that supersede the Plan; (3) any documents that terminate the Plan; (4) any Component Program Document incorporated in the Plan by reference; (5) any schedule of benefits promulgated under the Plan; and (6) any amendment or modification to the Plan.[1] DN 22-2 at 5. The record contains two of the Plan's documents—the Written Instrument and a Life Insurance Program Component Document Policy Booklet (the "Policy").[2] DN 22-2 at 5-52, DN 22-4. The record also evidences the Life Insurance Program Provisions of the Life Summary Plan Description ("SPD"). DN 22-2 at 86-110.

   1. **Beneficiary Provisions**

The Policy outlines "beneficiary rules" that "apply to insurance payable on account of [a policyholder's] death." DN 22-4 at 38. These rules define the term "beneficiary," state that a policyholder has "the right to choose a beneficiary," and explain the payment process for a variety of scenarios. DN 22-4 at 38. The "beneficiary rules" also state that the policyholder may change the beneficiary "at any time without the consent of the present [b]eneficiary." DN 22-4 at 38. To effectuate a change, the Policy requires an employee to complete a "[b]eneficiary change form [with] . . . the Contract Holder." DN 22-4 at 38.

Similarly, the SPD explains that an employee must "designate a beneficiary with the TWC Benefits Service Center naming the individual(s) . . . who will receive benefits if [the employee]

---

[1] The "Written Instrument" specifically includes twelve articles, two exhibits, and several amendments that state the core provisions of the Plan. DN 22-2 at 2-52. The terms of a Component Program, such as the Life Insurance Program, consist of the Written Instrument and those within the applicable Component Program Documents. DN 22-2 at 5. The Component Program Documents for a Component Program may modify or supersede the Written Instrument to the extent necessary to eliminate inconsistences between the provisions of the Written Instrument and those within Component Program Documents. DN 22-2 at 5.

[2] The Policy contains benefits information for basic employee term life coverage, optional employee term life coverage, and other life insurance benefit options. DN 22-4.

2

die[s] while [] coverage is in effect" and describes the division of policy proceeds. DN 22-2 at 92-93. The SPD expounds upon the policyholder's option to change a beneficiary, noting that "[a] change in beneficiary designation becomes effective the date [the policyholder] makes the change online through twcplusyou.com or [a] signed form is recorded by the TWC Benefits Service Center." DN 22-2 at 93.

### 2. Claim for Benefits Provisions

The Written Instrument, SPD, and Policy contain varying provisions regarding the process for filing a claim for benefits. The Written Instrument states that:

> Unless otherwise provided in the particular Component Program Document, claims for benefits shall be made in writing to the Claims Administrator (or the Administrator, if appropriate) within one year of the date the charges for the services were incurred. The Claims Administrator (or the Administrator) shall provide adequate notice to any claimant whose claim for benefits under the Plan has been denied, setting forth the reasons for such denial, and afford a reasonable opportunity to such claimant for a full and fair review by the appropriate Claims Administrator (or the Administrator) of the decision to deny the claim. Benefits will be paid under the Plan only if the Claims Administrator (or the Administrator) determines in its discretion that the applicant is entitled to them.

DN 22-2 at 21.

The SPD also explains that Prudential has the "sole authority to determine claims under the terms of the Life Program" and will only disburse benefits "upon receipt of adequate proof as required by the Claims Administrator." DN 22-2 at 104. In the event of the policyholder's death, the SPD states that a beneficiary should "[c]ontact the Claims Administrator as soon as reasonably possible, preferably within 20 days (but no later than 90 days)." DN 22-2 at 104. If a beneficiary must complete any forms to facilitate the disbursements of proceeds, Prudential is responsible for supplying certain forms "as well as any instructions on how to complete [them]." DN 22-2 at 104.

Even still, the Policy offers other "claim rules" that "apply to the payment of benefits under all accident coverages." DN 22-4 at 43. According to the Policy:

> Prudential must be given written proof of the loss including any requested documentation, such as a death certificate, for which claim is made under the Coverage. A claim form will be furnished for submitting proof of loss. But, if you are not given a claim form within 15 days after providing notice of claim, you must still submit the proof of loss. This proof must cover the occurrence, character and extent of that loss. Proof of loss must be furnished within 180 days after the date of the loss. But, if any Coverage provides for periodic payment of benefits at monthly or shorter intervals, the proof of loss for each such period must be furnished within 180 days after the period ends. A claim will not be considered valid unless the proof is furnished within these time limits. However, it may not be reasonably possible to do so. In that case, the claim will still be considered valid if the proof is furnished as soon as reasonably possible.

DN 22-4 at 43. Upon receipt of written proof of loss and any other requested documentation, such as a death certificate, Prudential distributes policy proceeds to the beneficiary. DN 22-4 at 43.

### 3. Plan's Limitations Period for Filing a Lawsuit Under ERISA § 502(a)

The Written Instrument and SPD also contain a one-year limitations period for filing a legal action under ERISA § 502(a). DN 22-2 at 21, 22-2 at 107. The Written Instrument states:

> Notwithstanding anything in the Plan or this Section [] to the contrary (except as specifically stated in a Component Program Document), no legal action at law or equity to recover benefits under the Plan may be filed unless the claimant has complied with and exhausted the administrative procedures under this Article 9, nor may such legal action be filed more than one year after the date on which the final adverse benefit determination under the Plan occurs.

DN 22-2 at 21. Likewise, the SPD notes that lawsuits under ERISA § 502(a) are permitted "when all available levels of review of denied claims, including the appeal process, have been completed and the claims were not approved in whole or in part as long as such action is brought within one year of the final adverse benefit determination." DN 22-2 at 107.

4

**B. Plaintiffs' Inquiry Regarding the Payment of Malone's Life Insurance Benefits**

Following Malone's death, Prudential communicated with Time Warner to determine the individual(s) designated as Malone's beneficiary. DN 22-1 at 7, 22-3 at 2, 43 at 13. Apparently, these communications revealed that D.S.S. and Javey Brown ("Brown") were not listed as Malone's primary beneficiaries. DN 22-1 at 3, 43 at 13. According to Prudential, "[o]n February 7, 2014, [] Malone . . . changed the beneficiary designation for her life insurance benefits from Plaintiffs to [] Malone's aunt, Tiffani Q. Graves." DN 22-1 at 1, 3.

Prudential spoke with Tiffani Graves ("Graves") in April 2014 to begin the process of distributing Malone's life insurance proceeds. DN 22-1 at 4, 22-5 at 4. Upon receipt of certain claim forms and other documents, such as Malone's death certificate, from Graves in June 2014, Prudential approved the payment of Malone's life insurance benefits to Graves. DN 22-5 at 3-4.

Quintina McDowell ("McDowell"), the Plaintiffs' aunt and current custodian of D.S.S., began calling Prudential in December 2014 to ask whom Malone named as her beneficiary. DN 31-2 at 2. During a conversation with Prudential on December 15, 2014, McDowell was told that Prudential could not advise whom Malone named as her beneficiary but learned that the "claim [for benefits] was approved on June 13, 2014." DN 22-6 at 6. She was also informed that Prudential would mail her Internal Revenue Service Form 712 ("Form 712"), to help facilitate her responsibilities as the Administratrix of Malone's estate, if McDowell sent Prudential Malone's estate documents.[3] DN 22-6 at 6.

McDowell received Form 712 on December 31, 2014. DN 31 at 6, 31-3 at 5-6. This document evidences that Graves was Malone's only beneficiary and that she received all policy

---

[3] Prior to McDowell's phone conversation with Prudential on December 15, 2014, she emailed Prudential requesting Form 712. DN 22-5 at 2. Form 712 is filed by executors with other tax forms to report the value of a life insurance policy's proceeds for estate tax purposes.

5

precedes. DN 31-3 at 6. However, the document does not indicate the date Malone changed her beneficiary designation. DN 31-3 at 6.

McDowell resumed her quest to determine whom Malone named as her beneficiary and when Malone changed her beneficiary in April 2015. DN 22-6 at 5. During several calls with Prudential that month, McDowell was told to contract Time Warner regarding her beneficiary questions because Prudential could not verify who Malone's beneficiary was. DN 22-6 at 3-5. The record does not indicate whether McDowell contacted Time Warner following these conversations with Prudential.

McDowell continued her investigation in September 2015. DN 49-1. The record evidences that, during a phone call with Prudential on September 2, 2015, McDowell was reminded that she should "contact the benefits administrator of Time Warner" regarding her questions about Malone's beneficiary designation because the information Prudential received from Time Warner did not show "the exact change of dates and who was listed prior." DN 49-1 at 3. The Prudential employee also told McDowell that March 26, 2014, was the date that appeared in Prudential's system revealing "who was listed as [Malone's] beneficiary." DN 49-1 at 3.

The following day, McDowell spoke with the same Prudential employee she talked to the day before to determine "when the claim was filed for [Malone's] death." DN 49-2 at 3. McDowell was told that the claim was filed on March 24, 2014. DN 49-2 at 3. The employee also clarified that March 24 was not when Malone changed her beneficiary; rather, this was the date Prudential "received the file [from Time Warner]" and "the date of the most recent beneficiary designation." DN 49-2 at 3. Further, McDowell was informed that Prudential did not know when the current primary beneficiary became listed because "that information [] comes from the benefits center." DN 49-2 at 3.

6

Later in September 2015, McDowell received a fax from Prudential detailing information regarding "the changes made by Jacinta Malone's beneficiary designation." DN 22-8 at 2-8, 31-3 at 9-14. This document lists Graves as Malone's primary beneficiary, "as of 09-09-15," and states that D.S.S. and Brown are secondary beneficiaries. DN 22-8 at 4-6, 31-3 at 10-12. It also confirms that as of February 6, 2014, Plaintiffs were the only beneficiaries. DN 22-8 at 7-8, 31-3 at 13-14.

It is not evident from the record whether McDowell spoke with Prudential regarding Malone's beneficiary designation after September 2015. It should be noted, though, that Chris Meinhart, the court appointed Successor Administrator of Malone's estate, corresponded with Prudential in 2017 and 2018 to obtain documentation regarding Malone's beneficiary designation change. DN 31-3 at 15-19. The record reveals that he did not receive any information or documentation that had not already been provided to McDowell. DN 31-3 at 15-19.

### C. Pending Lawsuit

On February 26, 2020, Plaintiffs filed this lawsuit in Jefferson County Circuit Court seeking payment of Malone's life insurance proceeds. DN 1-1 at 7. Prudential removed the action to our Court and Plaintiffs filed an Amended Complaint, which asserts that Prudential and Time Warner violated ERISA § 502(a)(1)(B) and other Kentucky laws. DN 1, 19 at 3-4.

Prudential subsequently filed a motion to dismiss. DN 22. In its motion, Prudential argued that Plaintiffs' state law claims were preempted by ERISA and that the claims under ERISA § 502(a)(1)(B) were untimely under the Plan's one-year limitations provision. DN 22-1 at 7-11, 43 at 13-14. On the other hand, the Plaintiffs' contended that their state law claims should not be dismissed in light of ERISA's savings clause and that their claims under ERISA § 502(a)(1)(B) did not accrue because Prudential "did not issue a claim denial" or comply "with its obligations under the Plan." DN 31 at 13-15, 16-17.

Upon review of the parties' briefs, record, and relevant law, the Court issued an Order on November 23, 2020, which dismissed all of Plaintiffs' claims against Prudential with prejudice.[4] DN 46.

## II. <u>LEGAL STANDARD</u>

A court may exercise its discretion to grant a motion to alter or amend under Federal Rule of Civil Procedure 59(e) "if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005); *see also GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Reconsideration may also be appropriate if the court fundamentally misapprehended the nature of the issues raised by the parties. *Browning v. Pennerton*, No. CIV.A. 7:08-CV88KKC, 2008 WL 4791491, at *1 (E.D. Ky. Oct. 24, 2008).

The purpose of Rule 59(e) "is to allow the district court 'to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings.'" *Howard v. United St*ates, 533 F.3d 472, 475 (6th Cir. 2008) (citing *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988). A Rule 59(e) motion "is not an opportunity to re-argue a case," and should not be used "to raise arguments which could, and should, have been made before judgment [was] issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). Instead, a party "must either clearly establish a manifest error of law or must present newly discovered evidence" to prevail on the motion. *Roger*

---

[4] The Court notes that Prudential was incorrectly referred to as the Plan's plan administrator in the section of the prior Memorandum Opinion explaining why Plaintiff's KUCSPA claim should be dismissed. DN 45 at 11. Prudential is in fact the Plan's claims administrator. Notwithstanding this misnaming, the Courts analysis is still proper. Unlike the defendant in *Harrison v. TEAMCARE-A Central States Health Plan*, 187 F. Supp. 3d 812 (W.D. Ky. 2016), HSCS, Prudential is not a third-party administrator against whom an ERISA claim cannot be brought. *Id.* at 822-23. Instead, Prudential owed fiduciary duties under the Plan and is subject to the civil enforcement mechanisms of ERISA. Indeed, Plaintiffs have brought a claim under 29 U.S.C. § 1132(a)(1)(B) seeking redressability for the alleged wrongful payment of benefits. Thus, Plaintiffs' KUCSPA claim cannot be saved by ERISA's savings clause because Plaintiffs are not permitted to use a state law claim as an alternative to recover ERISA plan benefits.

*Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (internal citation and quotation marks omitted).

## III. ANALYSIS

The Plaintiffs allege a clear error of law as the basis for their motion to alter or amend the Court's November 23, 2020 Order dismissing their claims against Prudential with prejudice. DN 51 at 1, 56 at 1. They contend that the Court "utilize[ed] the incorrect Plan provisions" in assessing their claims and that the Court "denied [them] the opportunity to engage in discovery" by converting Prudential's motion to dismiss to one for summary judgment. DN 51 at 2-10. On the other hand, Prudential argues that the Court relied on the appropriate Plan provisions in resolving its motion to dismiss and that no additional discovery is necessary. DN 55 at 4-8.

### A. Plaintiffs' ERISA Claim

Plaintiffs' state that the Court should have followed the provisions of the SPD in resolving whether their claim for the alleged wrongful payment of benefits under ERISA § 502(a)(1)(B) is time barred. DN 51 at 2. Plaintiffs suggest that if the Court had followed the SPD, we would have concluded that (1) Prudential did not provide a clear repudiation of benefits and (2) that the cause of action is not untimely because Prudential failed to file a claim for benefits on the Plaintiffs' behalf or provide certain documentation that follows a notice of claim denial. DN 51 at 2-7, 56 at 3-9. On the other hand, Prudential argues that the Court appropriately (1) upheld the Plan's one-year limitations provision for filing lawsuits under ERISA § 502(a)(1)(B), (2) applied the clear reputation rule to select December 31, 2014, as the accrual date, and (3) concluded that the Plaintiffs' ERISA claim was time barred. DN 55 at 4-7.

#### 1. Whether the Plan's Limitations Period Applies

The Plaintiffs' motion does not contain any citations or argument that attempt to persuade the Court that it incorrectly determined the Plan's one-year limitations period applied to the Plaintiffs. Instead, Plaintiffs contend that the Court should amend its prior Order because the limitations period did not accrue for purposes of the "clear repudiation rule."[5] DN 51 at 3. As such, we must again determine when the Plaintiffs cause of action accrued.

### 2. Accrual of Plaintiffs' ERISA Claim

The Sixth Circuit has repeatedly applied the "clear repudiation rule" to determine when a cause of action under 29 U.S.C. § 1132(a)(1)(B) accrues. *See e.g., Morrison v. Marsh & McLennan Companies, Inc.*, 439 F.3d 295, 301-03 (6th Cir. 2006); *Redmon v. Sud–Chemie Inc. Ret. Plan*, 547 F.3d 531, 538-40 (6th Cir. 2008); *Watkins v. JP Morgan Chase U.S. Benefits Exec.*, 570 F. App'x 458, 460 (6th Cir. 2014); *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 762-65 (6th Cir. 2017). Under this rule, "the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Patterson*, 845 F.3d at 764 (citing *Redmon,* 547 F.3d at 535).

The rule also provides that a clear and unequivocal repudiation of benefits alone is "adequate to commence accrual regardless of whether the repudiation is formal or not." *Morrison.*, 439 F.3d at 302. In fact, "an ERISA beneficiary's cause of action accrues . . . even before a claim for benefits is filed 'when there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary.'" *Bennett v. Federated Mut. Ins. Co.*, 141 F.3d 837, 839 (8th Cir.

---

[5] The Plaintiffs' motion argues for the first time that KRS 413.170 tolls KRS 413.120(2), which is the most analogous statute of limitations under Kentucky law applied by federal courts in the absence of a reasonable limitations period within an ERISA plan. *See Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 762–63 (6th Cir. 2017) (citing *Santino v. Provident Life & Accident Ins. Co*., 276 F.3d 772, 776 (6th Cir. 2001)) ("When a plan does not itself provide a limitations period, the Sixth Circuit applies 'the most analogous state statute of limitations' of the forum state"). The Court declines to address this argument because its prior discussion of KRS 413.120(2) operated as an independent basis for the Court's judgment. The Court previously determined that the Plan's one-year limitations period was, in fact, reasonable and the Plaintiffs' motion does not request the Court to amend that finding. DN 45 at 16.

10

1998) (citing *Union Pacific Railroad Co. v. Beckham*, 138 F.3d 325 (8th Cir. 1998)). Thus, a clear and unequivocal repudiation of benefits, whether through formal or informal means, causes a cause of action to accrue for statute of limitations purposes.

Here, there can be no question that any claim the Plaintiffs may have had for the alleged wrongful payment of benefits was clearly repudiated by Prudential when McDowell, acting on behalf of the Plaintiffs, was informed that another individual received Malone's life insurance proceeds and was able to confirm that information upon receipt of Form 712. During a call with Prudential on December 15, 2014, McDowell learned that Malone's life insurance proceeds were paid in June 2014 to someone other than the Plaintiffs. DN 22-6 at 6. She was not advised, however, of the name of the individual who received the proceeds because the Prudential employee was "not at liberty to discuss who [the claim] was paid out to." DN 22-6.

Shortly after this conversation, Prudential mailed McDowell Form 712 to facilitate her obligations as the Administratrix of Malone's estate. DN 31 at 5-6. McDowell received Form 712 on December 31, 2014. DN 31 at 5. Although the document does not list when Malone changed her beneficiary, it confirms that $147,000 of life insurance proceeds were paid and lists Graves as the individual to whom Prudential distributed the proceeds. DN 31 at 6.

In the months that followed, McDowell continued to call Prudential and Time Warner to inquire about the distribution of Malone's life insurance proceeds and when Malone changed her beneficiary designation. DN 22-6 at 3-5, 31-2 at 2-3, 31-3 at 7-14, 49-1, 49-2, 49-4. Yet, the record reveals that McDowell never requested a copy of the Plan's documents from Prudential, suggested that she wished to file a claim for benefits on the Plaintiffs' behalf, or asked about the process for submitting proof of loss or other documentation, such as a death certificate.

As such, December 31, 2014 is the most generous accrual date. Any belief or expectation that Plaintiffs were entitled to Malone's life insurance proceeds was repudiated at that time and could not have been reasonably maintained beyond that point because Plaintiffs were distinctly able to confirm that Malone's life insurance proceeds were paid to someone else. *See e.g., Fallin v. Commonwealth Indus., Inc. Cash Balance Plan,* 521 F. Supp. 2d 592, 597 (W.D. Ky. 2007), aff'd sub nom. *Fallin v. Commonwealth Indus., Inc.,* 695 F.3d 512 (6th Cir. 2012) (finding that a collection of a lump sum payment of retirement benefits in smaller amount than plaintiff claimed was due and owed under an ERISA plan satisfied the clear repudiation rule because "any expectation of a sum greater than what was received was repudiated at that time, and could not reasonably have been maintained beyond that point"). In the year that followed, Plaintiffs failed to file a lawsuit under 29 U.S.C. § 1132(a)(1)(B) asserting that Malone's life insurance proceeds were wrongfully paid. Although Plaintiffs were not provided with a document evidencing a formal repudiation or claim denial, the language of the "clear repudiation rule" makes a strong distinction between a "clear and unequivocal repudiation of benefits" and a "formal" repudiation, "which indicates that the former is something different, and considerably broader, than the latter, and that the former is the relevant point in time for purposes of accrual." *Id*. Further, any argument by the Plaintiffs that the limitations period should not begin to run until a plaintiff has exhausted their ERISA administrative remedies has been rejected by the Sixth Circuit. *See Morrison*, 439 F.3d at 302. Therefore, the Plaintiffs' claim for the alleged wrongful payment of benefits is time barred.

To avoid this result, Plaintiffs contend that the Plan's contractual limitations period could not have accrued because Prudential failed to follow the language within the Plan's SPD. DN 51 at 2-7. ERISA requires a written summary plan description to "reasonably apprise [] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). As such, the

summary plan description must contain a variety of information, including, among other things, the name and type of administration of the plan, the name and address of the administrator, claim submission procedures, the source of financing, and the remedies available for the redress of denied claims. 29 U.S.C. § 1022(b).

In *CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011), the United States Supreme Court considered whether the terms of a summary plan description could be enforced as a substitute for the provisions of the plan itself when analyzing a claim under ERISA § 502(a)(1)(B). *Id*. at 436-438. Although the Court recognized that 29 U.S.C. § 1132(a)(1)(B) permits "a court to look outside the plan's written language in deciding what [the terms of the plan] are, *i.e.*, what the language means," the Court could not "agree that the terms of statutorily required plan summaries . . . necessarily may be enforced (under § 502(a)(1)(B)) as the terms of the plan itself." *Id*. at 436-37. The Court explained that the syntax of 29 U.S.C. § 1022, "requiring that participants and beneficiaries be advised of their rights and obligations under the plan[,] suggests that the information *about* the plan provided by those disclosures is not itself *part* of the plan," and that "nothing in § 502(a)(1)(B) . . . suggests the contrary." *Id*. at 437 (emphasis in original). The Court noted that if it were to permit statements within the summary plan description to constitute terms of an ERISA plan, that decision would undoubtedly defeat "the basic summary plan description's objective: clear, simple communication." *Id*. ("To make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers"). Thus, the Court concluded that "summary documents, important as they are, provide communication with beneficiaries about the plan, but [] their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." *Id*. at 438.

Here, the Plaintiffs' reliance upon the SPD to persuade the Court that Prudential did not provide a clear repudiation of benefits is unfounded. The language of the SPD that was provided to participants of the Plan does not operate as a replacement for the terms within the Plan's documents. The SPD merely functions as a statutorily required tool to better communicate the nuanced language within the Plan's documents. *See Willis v. ITT Educ. Servs., Inc*., 254 F. Supp. 2d 926, 934 (S.D. Ohio 2003) ("By its very definition, a 'summary plan description' is not part of the plan itself; it is no more than what its title makes it out to be: a summary of a separate, free-standing Plan"). If we were to hold that the language of the SPD is legally binding in the Plaintiffs cause of action under 29 U.S.C. § 1132(a)(1)(B), it would run afoul of the Supreme Court's holding in *Amara* and bring about complexity that would defeat the fundamental purposes of summary plan descriptions. Thus, we will consider the provisions of Malone's Plan in resolving the Plaintiffs' arguments.

The Written Instrument's "Claims and Appeals Provision" does not apply to the Plaintiffs' claim against Prudential for the wrongful payment of benefits because the governing process for submitting a claim for benefits is "otherwise provided in [an] applicable Component Program Document" (i.e., the Policy). DN 22-2 at 21. According to the Policy's "Claim Rules," a beneficiary must provide Prudential with "written proof of the loss including any requested documentation, such as a death certificate, for which claim is made under the Coverage." DN 22-4 at 43. Following "notice of [a] claim," Prudential provides a beneficiary with certain "claim forms" to effectively submit written proof of loss. DN 22-4 at 43. "But, if [the beneficiary] is not given a claim form within 15 days after providing notice of a claim, [the beneficiary] must still submit the proof of loss" which "must cover the occurrence, character and extent of that loss." DN

14

22-4 at 43. Only upon receipt of written proof of loss and any other requested documentation, will Prudential distribute policy proceeds to the beneficiary. DN 22-4 at 43.

Nothing within the Policy indicates that Prudential had the responsibility to initiate a claim on the Plaintiffs behalf or proactively send McDowell certain claim forms, as the Plaintiffs' suggest. DN 51 at 2-5, 56 at 3-4. Instead, the Policy reveals that a beneficiary bears the burden to provide Prudential with "notice of [a] claim." DN 22-4 at 43. Only after being notified of a claim for benefits is Prudential obligated to supply a beneficiary with certain forms to evidence proof of loss. DN 22-4 at 43.

The Plaintiffs fail to cite to any portion of the record that contains a conversation between Prudential and McDowell that reasonably suggest the Plaintiffs attempted to notify Prudential of a claim or suggest that they wished to file a claim for benefits, which would have triggered Prudential's obligation to send certain claim forms. In fact, the record evidences that Prudential fulfilled its obligation under the Policy to provide a beneficiary with certain claim forms upon notification of a claim for benefits when it provided the requisite documents to Malone's listed beneficiary, Graves. DN 22-5 at 3-4.

Even if the conversations between McDowell and Prudential could somehow be interpreted to provide notice of a claim for benefits, Plaintiffs maintained the responsibility under the Policy to submit some written proof of loss that covered "the occurrence, character, and extent of [] loss" when they were "not given a claim form within 15 days after providing notice of [their] claim." DN 22-4 at 43. Rather than undertake this duty, the record reveals that McDowell, on behalf of Plaintiffs, engaged in an inquiry to determine who was listed as Malone's beneficiary and when the beneficiary designation was changed each time she spoke with Prudential and Time Warner. DN 22-5 at 2, 22-6 at 2-6, 31-2 at 2-3, 31-3 at 2-14, 49-1, 49-2, 49-4.

Moreover, the Plaintiffs' contention that Prudential did not effectively repudiate the Plaintiffs' claim for benefits because they failed to follow the SPD's "Claims and Appeals Process" is equally unpersuasive. DN 51 at 5-7. To trigger the claims review process stated in the Policy's "Claims Procedure" section and reiterated in the SPD, Prudential must first have been in "receipt of [a] claim." DN 22-4 at 49. Only upon receipt of a claim for benefits that is later denied is Prudential required to send "a written notice" that contains specific information. DN 22-4 at 49. As stated above, the record reveals that Plaintiffs never attempted to initiate the claims process, which would have triggered a formal benefits determination and the administrative review process. Further, it is not appropriate to characterize Prudential's clear repudiation of any claim for benefits as a denial that somehow triggered the Policy's "Claims Procedure" because this would defeat the unambiguous language of the Policy.

Additionally, the Plaintiffs argument that any claim for the alleged wrongful payment of benefits could not have accrued on December 31, 2014, because they were not aware of their injury and cannot be responsible for knowing about the Plan's one-year limitations period is unconvincing. DN 56 at 4-9. It is undisputed that on February 6, 2014, roughly six weeks before Malone's untimely passing, Plaintiffs were listed as Malone's only beneficiaries. DN 19 at 3, 22-1 at 3, 31-2 at 2. In December 2014, McDowell learned from Prudential that Malone's entire life insurance proceeds were paid to someone other than Plaintiffs. DN 22-6 at 6. A few weeks later, McDowell obtained written confirmation from Prudential of such and discovered to whom Malone's life insurance proceeds were paid. DN 31 at 5-6. Therefore, there is no question that, as of December 31, 2014, Plaintiffs were reasonably aware that they had suffered an alleged injury— they did not receive life insurance proceeds as they presumably had expected and felt they were entitled to.

16

Plaintiffs also cannot shield themselves behind their unawareness of the Plan's provisions or that during the year that followed Prudential's clear repudiation of benefits, they were uninformed that ERISA provided them with a claim for relief. DN 56 at 4-9. Plaintiffs, as beneficiaries, are bound to the terms and provisions within the Plan's documents. *See Morrison,* 439 F.3d at 303 (finding that a life insurance beneficiary was bound by ERISA plan's contractual limitations period). Although the Policy states that Prudential will provide "a printed copy" of the Policy upon request, McDowell's conversations with Prudential that are in the record cannot reasonably be considered to constitute a request to obtain the Plan's documents, receive information about the process for notifying Prudential of a claim for benefits, submit proof of loss, or provide other supplemental documentation, such as a death certificate. DN 22-5 at 2, 22-6 at 2-6, 31-2 at 2-3, 31-3 at 2-14, 49-1, 49-2, 49-4. Instead, McDowell, on behalf of the Plaintiffs, engaged in an investigation to determine when Malone's beneficiary designation was changed and failed to file a lawsuit alleging that the benefits of Malone's life insurance policy were wrongfully paid until many years later.

Accordingly, the Court declines to alter or amend its November 23, 2020 Order dismissing Plaintiffs' claim under ERISA § 502(a)(1)(B) against Prudential because it is untimely.

### B. Whether Discovery is Appropriate

Plaintiffs' motion to alter, amend, or vacate the Court's November 23, 2020 Order contends that the Court erroneously considered Prudential's motion to dismiss as one for summary judgment and request the Court to permit discovery. DN 51 at 7-11, 56 at 10. Prudential argues that the Court should not permit discovery because Plaintiffs previously argued that Prudential's motion to dismiss should be characterized as one for summary judgment and never moved for discovery under Federal Rule of Procedure 56(d). DN 55 at 2, 7-8.

When evaluating a motion to dismiss, a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008); *see also J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86–87 (6th Cir. 2007). Before converting a motion to dismiss, the Court must give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But notice is only required to the extent that "one party is likely to be surprised by the proceedings." *Wysocki v. Int'l Bus. Machs. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010) (citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000)). The necessity of prior notice "depends upon the facts and circumstances of each case." *Id.* (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998).

Here, Plaintiffs' argument is an attempt to relitigate an issue previously raised by the parties and directly addressed by the Court. DN 45 at 5-6. The Court recognized in its prior Memorandum Opinion that Prudential attached Malone's Plan documents, along with numerous other exhibits evidencing the investigation McDowell undertook regarding Malone's life insurance policy, to its motion to dismiss. DN 45 at 6. In response, the Plaintiffs' stated that they would "demonstrate the Motion is in actuality one for summary judgment." DN 31 at 11. However, Plaintiffs did not attempt to explain why the Court should not treat Prudential's motion as one for summary judgment or file a Rule 56(d) motion for additional discovery. In fact, Plaintiffs attached documents outside the pleadings, including an affidavit from McDowell, timeline of relevant events, and documents evidencing communications McDowell had with Prudential, and requested the Court to consider them in support of their arguments. DN 31-1, 31-2, 31-3.

The Court declines to accept the notion that Plaintiffs should now be granted additional discovery because they "did not acquiesce" to the conversion or that the treatment of Prudential's motion to dismiss "came as quite a surprise." DN 51 at 9, 56 at 10. Both parties submitted several extrinsic exhibits addressing the issue of whether Plaintiffs claim for the alleged wrongful payment of benefits under ERISA § 502(a)(1)(B) should be dismissed. DN 22-2, 22-3, 22-4, 22-5, 22-6, 31-1, 31-2, 31-3. The parties subsequently utilized these documents in their briefs to explain their positions and implored the Court to consider them in resolving Prudential's motion to dismiss. Thus, the Plaintiffs' reliance upon these documents as well as their failure to request discovery provided proper notice that the Court could convert Prudential's motion to dismiss into a motion for summary judgment.

Accordingly, the Court declines to alter or amend its November 23, 2020 Order finding that it was appropriate to convert Prudential's motion to dismiss into a motion for summary judgment without additional notice to the Plaintiffs.

## V. <u>CONCLUSION</u>

For the reasons discussed herein, Plaintiffs' motion to alter, amend, or vacate the Court's November 23, 2020 Order will be denied by separate order.

February 26, 2021



Charles R. Simpson III, Senior Judge
United States District Court