UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

D.S.S., et al.                                                                                           PLAINTIFFS

vs.                                                            CIVIL ACTION NO. 3:20-CV-248-CRS

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA AND TIME WARNER CABLE                                       DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Time Warner Cable's ("Time Warner") motion to dismiss. DN 44, 44-1. Plaintiffs filed a response. DN 49. Time Warner then filed a reply. DN 54. The matter is now ripe for review.

For the reasons stated herein, Time Warner's motion will be granted.

**I. BACKGROUND**

Jacinta Malone ("Malone") passed away on March 18, 2014. DN 19 at 2. At the time of her death, she was employed by Time Warner. DN 19 at 2. As part of her employment, she participated in an employee welfare benefit plan (the "Plan"). DN 19 at 2. Under the Plan, Malone received life insurance coverage of $147,000. DN 19 at 3, 22-3 at 2. Prudential served as the Plan's claims administrator. DN 22-2 at 6, 22-4 at 49, 92. Time Warner operated as the Plan's plan administrator. DN 49 at 9.

**A. Relevant Plan Provisions**

The Plan includes: (1) a Written Instrument; (2) any documents that supersede the Plan; (3) any documents that terminate the Plan; (4) any Component Program Document incorporated in the Plan by reference; (5) any schedule of benefits promulgated under the Plan; and (6) any

amendment or modification to the Plan.[1] DN 22-2 at 5. The record contains two of the Plan's documents—the Written Instrument and a Life Insurance Program Component Document Policy Booklet (the "Policy").[2] DN 22-2 at 5-52, DN 22-4. The record also evidences the Life Insurance Program Provisions of the Life Summary Plan Description ("SPD"). DN 22-2 at 86-110.

### 1. Beneficiary Provisions

The Policy outlines "beneficiary rules" that "apply to insurance payable on account of [a policyholder's] death." DN 22-4 at 38. These rules define the term "beneficiary," state that a policyholder has "the right to choose a beneficiary," and explain the payment process for a variety of scenarios. DN 22-4 at 38. The "beneficiary rules" also state that the policyholder may change the beneficiary "at any time without the consent of the present [b]eneficiary." DN 22-4 at 38. To effectuate a change, the Policy requires an employee to complete a "[b]eneficiary change form [with] . . . the Contract Holder." DN 22-4 at 38.

Similarly, the SPD explains that an employee must "designate a beneficiary with the TWC Benefits Service Center naming the individual(s) . . . who will receive benefits if [the employee] die[s] while [] coverage is in effect" and describes the division of policy proceeds. DN 22-2 at 92-93. The SPD expounds upon the policyholder's option to change a beneficiary, noting that "[a] change in beneficiary designation becomes effective the date [the policyholder] makes the change online through twcplusyou.com or [a] signed form is recorded by the TWC Benefits Service Center." DN 22-2 at 93.

---

[1] The "Written Instrument" specifically includes twelve articles, two exhibits, and several amendments that state the core provisions of the Plan. DN 22-2 at 2-52. The terms of a Component Program, such as the Life Insurance Program, consist of the Written Instrument and those within the applicable Component Program Documents. DN 22-2 at 5. The Component Program Documents for a Component Program may modify or supersede the Written Instrument to the extent necessary to eliminate inconsistences between the provisions of the Written Instrument and those within Component Program Documents. DN 22-2 at 5.
[2] The Policy contains benefits information for basic employee term life coverage, optional employee term life coverage, and other life insurance benefit options. DN 22-4.

2

## 2. Claim for Benefits Provisions

The Policy and SPD also contain provisions regarding the process for filing a claim for benefits.[3] According to the Policy's "claim rules" section:

> Prudential must be given written proof of the loss including any requested documentation, such as a death certificate, for which claim is made under the Coverage. A claim form will be furnished for submitting proof of loss. But, if you are not given a claim form within 15 days after providing notice of claim, you must still submit the proof of loss. This proof must cover the occurrence, character and extent of that loss. Proof of loss must be furnished within 180 days after the date of the loss. But, if any Coverage provides for periodic payment of benefits at monthly or shorter intervals, the proof of loss for each such period must be furnished within 180 days after the period ends. A claim will not be considered valid unless the proof is furnished within these time limits. However, it may not be reasonably possible to do so. In that case, the claim will still be considered valid if the proof is furnished as soon as reasonably possible.

DN 22-4 at 43. Upon receipt of written proof of loss and any other requested documentation, such as a death certificate, Prudential distributes policy proceeds to the beneficiary. DN 22-4 at 43.

Similarly, the SPD explains that Prudential has the "sole authority to determine claims under the terms of the Life Program" and is responsible for supplying certain forms, "as well as any instructions on how to complete [them]," to help facilitate the distribution of benefits to the named beneficiary. DN 22-2 at 104. The SPD also clarifies that Time Warner "does not evaluate claims or appeals for benefits under the Life Program." DN 22-2 at 107.

## 3. Plan's Limitations Period for Filing a Lawsuit Under

The Written Instrument and SPD contain a one-year limitations period for filing a legal action under ERISA § 502(a). DN 22-2 at 21, 22-2 at 107. The Written Instrument states:

---

[3] The Written Instrument's "Claims and Appeals Procedure" does not apply to the Plaintiffs' claim under ERISA § 502(a)(1)(B) because the governing process for submitting a claim for benefits is "otherwise provided in [an] applicable Component Program Document" (i.e., the Policy). DN 22-2 at 21.

3

> Notwithstanding anything in the Plan or this Section [] to the contrary (except as specifically stated in a Component Program Document), no legal action at law or equity to recover benefits under the Plan may be filed unless the claimant has complied with and exhausted the administrative procedures under this Article 9, nor may such legal action be filed more than one year after the date on which the final adverse benefit determination under the Plan occurs.

DN 22-2 at 21. Likewise, the SPD notes that lawsuits under ERISA § 502(a) are permitted "when all available levels of review of denied claims, including the appeal process, have been completed and the claims were not approved in whole or in part as long as such action is brought within one year of the final adverse benefit determination." DN 22-2 at 107.

### B. Plaintiffs' Inquiry Regarding the Payment of Malone's Life Insurance Benefits

Following Malone's death, Prudential communicated with Time Warner to determine the individual(s) designated as Malone's beneficiary. DN 22-3 at 2, 44-1 at 7. Apparently, these communications revealed that D.S.S. and Javey Brown ("Brown") were not listed as Malone's primary beneficiaries. DN 44-1 at 7. According to Time Warner, "[Tiffiani] Graves was the primary beneficiary on the policy as of February 7, 2014—more than a month before Ms. Malone's death." DN 44-1 at 7.

Prudential spoke with Tiffiani Graves ("Graves") in April 2014 to begin the process of distributing Malone's life insurance proceeds. DN 22-5 at 4. Upon receipt of certain claim forms and other documents, such as Malone's death certificate, from Graves in June 2014, Prudential approved the payment of Malone's life insurance benefits to Graves. DN 22-5 at 3-4.

Quintina McDowell ("McDowell"), the Plaintiffs' aunt and current custodian of D.S.S., began calling Prudential in December 2014 to ask whom Malone named as her beneficiary. DN 31-2 at 2. During a conversation with Prudential on December 15, 2014, McDowell was told that Prudential could not advise whom Malone named as her beneficiary but learned that the "claim

[for benefits] was approved on June 13, 2014." DN 22-6 at 6. She was also informed that Prudential would mail her Internal Revenue Service Form 712 ("Form 712"), to help facilitate her responsibilities as the Administratrix of Malone's estate, if McDowell sent Prudential Malone's estate documents.[4] DN 22-6 at 6.

McDowell received Form 712 on December 31, 2014. DN 31-3 at 5-6. This document evidences that Graves was Malone's only beneficiary and that she received all policy proceeds. DN 31-3 at 6. However, the document does not indicate the date Malone changed her beneficiary designation. DN 31-3 at 6.

McDowell resumed her quest to determine whom Malone named as her beneficiary and when Malone's beneficiary designation was changed the following year. DN 22-6 at 5. During several calls with Prudential in April 2015, McDowell was told to contract Time Warner regarding her beneficiary questions because Prudential could not verify the name of Malone's beneficiary. DN 22-6 at 3-5. The record does not indicate whether McDowell contacted Time Warner following her April conversations with Prudential.

McDowell continued her investigation in September 2015. DN 49-1. The record evidences that, during a phone call with Prudential on September 2, 2015, McDowell was reminded that she should "contact the benefits administrator of Time Warner" for answers to her questions about Malone's beneficiary designation because the information Prudential received from Time Warner did not show "the exact change of dates and who was listed prior." DN 49-1 at 3. The Prudential employee also told McDowell that March 26, 2014, was the date that appeared in Prudential's system regarding "who was listed as [Malone's] beneficiary." DN 49-1 at 3.

---

[4] Prior to McDowell's phone conversation with Prudential on December 15, 2014, she emailed Prudential requesting Form 712. DN 22-5 at 2. Form 712 is filed by executors with other tax forms to report the value of a life insurance policy's proceeds for estate tax purposes.

5

The following day, McDowell spoke with the same Prudential employee she talked to the day before to determine "when the claim was filed for [Malone's] death." DN 49-2 at 3. McDowell was told that the claim was filed on March 24, 2014. DN 49-2 at 3. The Prudential employee also clarified that March 24 was not when Malone changed her beneficiary; rather, this was the date Prudential "received the file [from Time Warner]." DN 49-2 at 3. Further, the employee repeated that Prudential did not know when Malone's current primary beneficiary became listed because "that information [] comes from the benefits center." DN 49-2 at 3.

A week later, McDowell called Time Warner regarding "the effective date for [Malone's] beneficiary [change]." DN 49-3 at 3. She was informed that "[Malone] called on February 7th and requested that change." DN 49-3 at 3. The Time Warner employee also told McDowell that she could not provide her with any additional documentation or information about the change because Malone's account was "closed out" and she could not "see any of the other information." DN 49-3 at 4.

That same day, McDowell spoke with Prudential to verify whether a policyholder could change their beneficiary designation over the phone. DN 49-4 at 3. She was told that beneficiary changes could "only . . . be done online or through a paper document . . . because if anything were to happen and [Prudential] needed to know where the changes occurred, [Prudential] would need a more secure source than a telephone conversation to make any - - such a secured request."[5] DN 49-4 at 3.

---

[5] McDowell received a fax from Prudential shortly after this conversation detailing information Prudential maintained regarding Malone's beneficiary designation. DN 22-8 at 2-8, 31-3 at 9-14. This document reveals that as of September 9, 2015, Graves was Malone's primary beneficiary and that D.S.S. and Brown were secondary beneficiaries. DN 22-8 at 4-6, 31-3 at 10-12. It also confirms that as of February 6, 2014, Plaintiffs were the only beneficiaries. DN 22-8 at 7-8, 31-3 at 13-14. The documents do not reveal when Graves became a beneficiary.

It is not evident whether McDowell spoke with Prudential or Time Warner regarding Malone's beneficiary designation after September 2015. It should be noted, though, that Chris Meinhart, the court appointed Successor Administrator of Malone's estate, corresponded with Prudential in 2017 and 2018 to obtain documentation regarding Malone's beneficiary change. DN 31-3 at 15-19. The record reveals that he did not receive any information or documentation that had not already been provided to McDowell. DN 31-3 at 15-19.

**C. Pending Lawsuit**

On February 26, 2020, Plaintiffs filed this lawsuit in Jefferson County Circuit Court seeking payment of Malone's life insurance proceeds. DN 1-1 at 7. Prudential removed the action to our Court and Plaintiffs filed an Amended Complaint. DN 1, 19 at 3-4. Prudential subsequently filed a motion to dismiss. DN 22. Upon review of the parties' briefs, record, and relevant law, the Court issued an Order on November 23, 2020, which dismissed all of Plaintiffs' claims against Prudential with prejudice. DN 46. The Court recently reaffirmed its findings when it denied Plaintiffs' motion to alter, amend, or vacate the November 23, 2020 Order. DN 57, 58.

## II. LEGAL STANDARD

When evaluating a motion to dismiss, a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008); *see also J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86–87 (6th Cir. 2007). Before converting a motion to dismiss, the Court must give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But notice is only required to the extent that "one party is likely to be surprised by the proceedings." *Wysocki v. Int'l Bus. Machs. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010) (citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare*

7

*Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000)). The necessity of prior notice "depends upon the facts and circumstances of each case." *Id.* (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998)).

Under the situation presented here, Time Warner's motion to dismiss incorporated by reference arguments made and documents produced by Prudential that are applicable to Time Warner. DN 44-1 at 5. In response, Plaintiffs asked the Court to treat Time Warner's motion as one to dismiss rather than one for summary judgment to "maintain the legal feasibility [] standard of review and confine consideration of the Motion to the pleadings." DN 49 at 3. Alternatively, Plaintiffs requested the Court to "permit them to engage in discovery" regarding the merits of their claim if we treat Time Warner's motion as one for summary judgment. DN 49 at 4. Yet, Plaintiffs declined to file a motion under Rule 56(d) or explain how certain avenues of discovery would be necessary to the Court's judgment. In fact, Plaintiffs attached four documents to their Response that are unquestionably outside the pleadings and implored the Court to consider them in reaching a judgment. DN 49-1, 49-2, 49-3, 49-4.

Although the Plan documents are likely part of the pleadings, the parties' other exhibits are unquestionably outside the pleadings. We thus decline to grant Plaintiffs' plea for discovery within their Response or accept the notion that Time Warner's motion should not be treated as one for summary judgment. Both parties submitted extrinsic exhibits addressing the issue of whether Plaintiffs' allegations against Time Warner should be dismissed. The parties subsequently utilized these documents in their briefs to explain their positions and implored the court to consider them in resolving Time Warner's motion. Thus, Plaintiffs' reliance upon these documents as well as their failure to request discovery under Rule 56(d) provides sufficient notice that the Court could convert Time Warner's motion to dismiss into a motion for summary judgment.

A party moving for summary judgment must demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue of material fact is genuine if a rational fact finder could find in favor of either party on the issue. *Id.* at 248.

In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party moving for summary judgment bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A party can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56 (c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. ANALYSIS

Plaintiffs' Amended Complaint alleges that Prudential and Time Warner "wrongfully paid or arranged for payment of [life insurance proceeds] . . . to Graves." DN 19 at 3. Second, they claim that Defendants "fraudulently concealed information and documentation concerning the claim." DN 19 at 4. Third, they argue that Defendants "breached fiduciary duties and committed bad faith." DN 19 at 4.

    A. **State Law Claims**

Time Warner contends that it cannot be liable to Plaintiffs for state law claims of fraudulent concealment, breach of fiduciary duty, and common law bad faith considering ERISA's preemption clause and other independent reasons. DN 44-1 at 8-12, 54 at 8. Plaintiffs declined to address Time Warner arguments. DN 49 at 22. Instead, Plaintiffs incorporated by reference their argument against preemption that were raised in Response to Prudential's motion to dismiss. DN 49 at 22.

As the Court previously stated, ERISA provides a uniform regulatory regime that protects "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). The United States Supreme Court has recognized that ERISA's carefully crafted scheme "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 42 (1987). To this end, ERISA includes an expansive preemption provision, which intends to make the area of employee benefit plans solely a federal concern. *See FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (noting that ERISA's "pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA").

ERISA's express preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "The phrase 'relate to' is given broad meaning such that a state law cause of action is preempted 'if it has connection with or reference to such a plan.'" *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991) (citing *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97 (1983)). Only state law claims "whose effect on employee benefit plans is merely tenuous, remote, or peripheral are not preempted." *Id*. at 1276.

Here, Plaintiffs' state law claims are preempted because they "relate to" Malone's employee welfare benefit plan. Plaintiffs' claims focus entirely on the alleged wrongful payment of benefits of Malone's life insurance benefits and do not seek to correct any violation of a legal duty that is independent of ERISA. *See Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013) (citing *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004)) (finding that a state law claim is only independent of ERISA when the duty conferred was "not derived from, or conditioned upon, the terms of" the plan and there is no "need [] to interpret the plan to determine whether that duty exists"). Masking these claims under common law names will not escape ERISA's exclusive jurisdiction in determining whether the Plaintiffs have a cause of action to recover life insurance benefits paid to Graves after a thorough examination of her policy. *See Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) ("claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law"). As such, each state law claim arises in this instance solely because of Plaintiffs' claim under 29 U.S.C. § 1132(a)(1)(B) and is preempted.

In a last-ditch effort to defeat preemption, Plaintiffs incorporated an argument raised in their Response to Prudential's motion to dismiss, which contends that ERISA's savings clause salvages their state law claim under the Kentucky Unfair Claims Settlement Practices Act. DN 31 at 16-17, 49 at 22. However, this argument is inapplicable to Time Warner. The Complaint alleges that Prudential, not Time Warner, "breached its contract, violated duties under ERISA, and/or violated the Unfair Claims Settlement Practice Act contained in KRS 304.12-230." DN 19 at 4.

The Plaintiffs further do not assert their savings clause argument with respect to their other state law claims asserted against Time Warner or respond to any of Time Warner's arguments regarding the state law claims plead against them. In fact, Plaintiffs have cited no authority to

11

support the allegation that Time Warner "fraudulently concealed information and documentation" or that Time Warner "breached [its] fiduciary duties and committed bad faith." DN 19 at 4. As there is a complete absence of evidence and argument in support of Plaintiffs' state law claims asserted against Time Warner, we will deem them abandoned.

### B. ERISA Claim

Time Warner contends that Plaintiffs' claim under ERISA § 502(a)(1)(B) for the alleged wrongful payment of benefits is untimely based on the Plan's limitations provisions and KRS 413.120(2). DN 44-1 at 12-14, 54 at 9-13. On the other hand, Plaintiffs contend that their cause of action is timely because (1) the Plan's limitations period does not apply to them, (2) Defendants did not initiate the claims process, (3) Defendants failed to provide a clear repudiation of benefits, and (4) Defendants failed to comply with the terms of the SPD. DN 49 at 10-22.

#### 1. Whether the Plan's Limitations Period Applies

As the Court previously explained, ERISA does not provide a statute of limitations for the recovery of plan benefits. *See Redmon v. Sud-Chemie Inc. Ret. Plan for Union Employees*, 547 F.3d 531, 534 (6th Cir. 2008) ("ERISA does not provide a statute of limitations for a claim for benefits under § 1132(a)(1)(B)"). Instead, federal courts apply the most analogous statute of limitations under state law, typically the statute of limitations applicable under state contract law, unless an ERISA plan contains a limitations period. *See Patterson v. Chrysler Grp., LLC,* 845 F.3d 756, 762–63 (6th Cir. 2017) (citing *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001)) ("When a plan does not itself provide a limitations period, the Sixth Circuit applies 'the most analogous state statute of limitations' of the forum state").

Courts apply a plan's limitations period so long as the contractually agreed upon period is reasonable. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.,* 571 U.S. 99, 105–06 (2013)

12

(upholding a plan provision imposing a three-year limitation period on a participant's right to file suit under ERISA Section 502(a)(1)(B), stating that "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable"); *Morrison v. Marsh & McLennan Companies, Inc.*, 439 F.3d 295, 301 (6th Cir. 2006), (upholding a limitations provision in an ERISA plan that required an individual to bring a legal action within three years of the date his or her benefits were denied or the date the cause of action first accrued, if earlier); *Daniels v. Life Ins. Co. of N. Am.*, No. 5:08-CV-137-R, 2009 WL 604128, at *2 (W.D. Ky. Mar. 6, 2009) (finding that a policy's three-year limitations period barred the plaintiff's claim, which was filed six years after the insurer denied plaintiff's claim for benefits). Although the Sixth Circuit has not considered whether an ERISA plan's one-year limitations period for filing a lawsuit is reasonable, other federal courts have answered the question in the affirmative. *See Fetterhoff v. Liberty Life Assur. Co.*, 282 F. App'x 740, 744 (11th Cir. 2008) (upholding the district court's dismissal of the plaintiff's claim for benefits after finding the policy's agreed upon one-year limitations period applied); *Ford v. Premera Blue Cross*, No. C17-1738 MJP, 2018 WL 1620984, at *2 (W.D. Wash. Apr. 4, 2018) (finding that the parties "had a right to contract for a one-year limitations period, and that such a period is reasonable"); *Chiappa v. Cumulus Media, Inc.*, No. 1:20-CV-847-TWT, 2020 WL 7401745, at *2-3 (N.D. Ga. Dec. 17, 2020) (finding that an ERISA plan's one-year limitations period for filing a lawsuit was reasonable and dismissing claims against the plan's named fiduciary as time barred).

Here, the Written Instrument and the SPD contain a one-year limitations period that governs when a lawsuit must be filed "to recover benefits under the Plan." DN 22-2 at 21. The Plaintiffs do not argue that the limitations period is "unreasonable per se." DN 49 at 9. Instead,

they contend that the one-year period is unreasonable as it applies to the them individually, considering that they were minors and were not aware of a limitations period. DN 49 at 9.

This argument is unpersuasive. Plaintiffs, as beneficiaries, are bound to the Plan's contractual limitations period even if they did not learn about the Plan's provision until Prudential attached certain Plan documents as exhibits to their motion to dismiss. *See e.g., Morrison,* 439 F.3d at 303 (finding that a life insurance beneficiary was bound by ERISA plan's contractual limitations period because "a plaintiff claiming to be a beneficiary under the coverage can be in no better position than the participant would be"). Moreover, the Plaintiffs failed to provide the Court with any authority to support their contention that the Plan's limitations period should be tolled considering their age.[6] As such, we must again determine when the Plaintiffs cause of action accrued.

### 2. Accrual of Plaintiffs' ERISA Claim

The Sixth Circuit has repeatedly applied the "clear repudiation rule" to determine when a cause of action under 29 U.S.C. § 1132(a)(1)(B) accrues. *See e.g., Morrison*, 439 F.3d 295, 301-03 (6th Cir. 2006); *Redmon*, 547 F.3d 531, 538-40 (6th Cir. 2008); *Watkins v. JP Morgan Chase U.S. Benefits Exec.*, 570 F. App'x 458, 460 (6th Cir. 2014); *Patterson*, 845 F.3d 756, 762-65 (6th Cir. 2017). Under this rule, "the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Patterson*, 845 F.3d at 764 (citing *Redmon,* 547 F.3d at 535).

---

[6] Although Plaintiffs do not directly make the argument, they imply that KRS 413.170 should toll the applicable limitations period. DN 49 at 9. KRS 413.170 likely tolls KRS 413.120(2), which is the most analogous statute of limitations under Kentucky law applied by federal courts in the absence of an ERISA plan's reasonable limitations period. However, Plaintiffs have not provided the Court with any authority or argument to support the contention that KRS 413.170 tolls the Plan's one-year limitations period. In light of our finding that the Plan's one-year limitations period applies, we decline to address whether Plaintiffs' claim for the alleged wrongful payment of benefits is timely under KRS 413.120.

The rule also provides that a clear and unequivocal repudiation of benefits alone is "adequate to commence accrual regardless of whether the repudiation is formal or not." *Morrison*, 439 F.3d at 302. In fact, "an ERISA beneficiary's cause of action accrues . . . even before a claim for benefits is filed 'when there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary.'" *Bennett v. Federated Mut. Ins. Co.*, 141 F.3d 837, 839 (8th Cir. 1998) (citing *Union Pacific Railroad Co. v. Beckham*, 138 F.3d 325 (8th Cir. 1998)). Thus, a clear and unequivocal repudiation of benefits, whether through formal or informal means, causes a cause of action to accrue for statute of limitations purposes.

The record evidences that McDowell first spoke with Prudential regarding Malone's life insurance benefits on December 15, 2014. DN 22-6 at 6. During this conversation, McDowell learned that Malone's life insurance proceeds were paid in June 2014 to someone other than the Plaintiffs. DN 22-6 at 6. She was not advised, however, of the name of the individual who received the proceeds because the Prudential employee was "not at liberty to discuss who [the claim] was paid out to." DN 22-6.

Shortly after this conversation, Prudential mailed McDowell Form 712 to facilitate her obligations as the Administratrix of Malone's estate. DN 31 at 5-6. McDowell received Form 712 on December 31, 2014. DN 31 at 5. Although the document does not list when Malone changed her beneficiary, it confirms that $147,000 of life insurance proceeds were paid and lists Graves as the individual to whom Prudential distributed the proceeds. DN 31 at 6.

McDowell continued to call Prudential in 2015 to inquire about the distribution of Malone's life insurance proceeds and when Malone changed her beneficiary designation. During each of McDowell's conversations with Prudential in April 2015, she was informed that Prudential could not provide information regarding Malone's beneficiary designation change, but that she

should contact Time Warner. DN 22-6 at 3-5. However, it does not appear from the record that McDowell spoke with Time Warner about Malone's beneficiary change in the weeks that followed these conversations.

McDowell resumed her inquiries in September 2015. DN 49-1. During a call with Prudential on September 2, 2015, McDowell was told that Prudential "wouldn't have [] particular information that shows the exact change of dates and who was listed prior. What you want to do is contact the benefits administrator of Time Warner . . . ." DN 49-1 at 3. Instead of contacting Time Warner immediately, McDowell spoke with Prudential again the next day to determine when "the claim was filed for [Malone's] death." DN 49-2 at 3. She learned that the claim for benefits was filed on March 24, 2014, and that this date represented "the most recent beneficiary designation . . . not the effective date" of the beneficiary designation change. DN 49-2 at 3. McDowell was also reminded that she should contract Time Warner's "benefits center" to learn when Graves became the beneficiary. DN 49-2 at 3.

A week after this conversation, McDowell spoke with Time Warner regarding the "effective date for [Malone's] beneficiary." DN 49-3 at 3. McDowell was informed that "[Malone] called on February the 7th and requested that change." DN 49-3 at 3. The Time Warner employee also told McDowell that she could not provide her with any additional documentation or information about the change, even though McDowell was the Administratrix of Malone's estate, because Malone's account was "closed out" and she could not "see any of the other information." DN 49-3 at 4.

Viewing the facts in the light most favorable to the Plaintiffs, December 31, 2014 is the most generous accrual date. At this time, McDowell, acting on behalf of the Plaintiffs, was informed that another individual received Malone's life insurance proceeds and was able to

16

confirm that information upon receipt of Form 712. There can be no question that any belief or expectation that Plaintiffs were entitled to Malone's life insurance proceeds was repudiated at that time and could not have been reasonably maintained beyond that point because Plaintiffs were distinctly able to confirm that Malone's life insurance proceeds were paid to someone else. *See e.g., Fallin v. Commonwealth Indus., Inc. Cash Balance Plan,* 521 F. Supp. 2d 592, 597 (W.D. Ky. 2007), aff'd sub nom. *Fallin v. Commonwealth Indus., Inc.,* 695 F.3d 512 (6th Cir. 2012) (finding that a collection of a lump sum payment of retirement benefits in smaller amount than plaintiff claimed was due and owed under an ERISA plan satisfied the clear repudiation rule because "any expectation of a sum greater than what was received was repudiated at that time, and could not reasonably have been maintained beyond that point").

In the year that followed, Plaintiffs failed to file a lawsuit under 29 U.S.C. § 1132(a)(1)(B) asserting that Malone's life insurance proceeds were wrongfully paid. Although Plaintiffs were not provided with a document evidencing a formal claim denial, the language of the "clear repudiation rule" makes a strong distinction between a "clear and unequivocal repudiation of benefits" and a "formal" repudiation, "which indicates that the former is something different, and considerably broader, than the latter, and that the former is the relevant point in time for purposes of accrual." *Id*. Further, any argument by the Plaintiffs that the limitations period should not begin to run until a plaintiff has exhausted their ERISA administrative remedies has been rejected by the Sixth Circuit. *See Morrison*, 439 F.3d at 302. Thus, there is no question that, as of December 31, 2014, any cause of action the Plaintiffs may have had for the wrongful payment of benefits accrued because they were reasonably aware they had suffered an alleged injury—they did not receive life insurance proceeds as they presumably had expected and felt they were entitled to.

To avoid this result, Plaintiffs re-hash many of the same arguments raised with respect to Prudential, the Plan's claims administrator. Plaintiffs contend that their cause of action is timely because the Defendants did not initiate the claims process, provide a clear repudiation of benefits, comply with the Plan's administrative process, or proactively deliver certain Plan documents. DN 49 at 10-22.

Plaintiffs fail to provide any authority that demonstrates how these arguments apply to Time Warner, the Plan's plan administrator. The Plan's documents evidence that Time Warner "does not evaluate claims or appeals for benefits under the Life Program." DN 22-2 at 107. In fact, Time Warner is only responsible for evaluating "claims related to [a participant's] eligibility to participate in the Plan or the Life Program." DN 22-2 at 104.

Although the Plan requires Time Warner to follow the claims and appeals procedures in "instances where a claim for eligibility also involve[s] a benefits determination," that is not the situation presented here. DN 22-2 at 104. This case involves whether Plaintiffs' claim against Time Warner for the alleged wrongful payment of benefits is timely. The record reveals that Prudential, not Time Warner, is the party responsible for receiving notice of a claim for benefits, providing certain claim forms to beneficiaries to submit proof of loss, distributing policy proceeds, issuing a formal claim denial when necessary, administering the Plan's claims and appeals process, and supplying participants and beneficiaries with a copy of Plan documents upon request. DN 22-2 at 21, 92-93, 104-107, DN 22-4 at 43. Therefore, Plaintiffs arguments regarding the receipt of a repudiation of benefits and compliance with the Plan's administrative process are unpersuasive.[7]

---

[7] Plaintiffs' Response notes that Defendants' failure to (1) provide notice of the Plan's limitations period, (2) invoke the claims process on the Plaintiffs' behalf, and (3) distribute payment when there was no valid beneficiary change was "a breach of fiduciary duty and operates to toll the limitations period." DN 49 at 16, 19, 20-22. However, Plaintiffs have not asserted a claim for breach of fiduciary duty under ERISA § 502(a)(3). DN 31 at 16. Further, their Response does not argue how these assertions would toll the Plan's limitations period from accruing.

18

Accordingly, Plaintiffs' claim under ERISA § 502(a)(1)(B) against Time Warner for the alleged wrongful payment of benefits is untimely.

## V. CONCLUSION

For the reasons discussed herein, Time Warner's motion to dismiss, which is being treated as a motion for summary judgment, will be granted by separate order.

March 17, 2021

Charles R. Simpson III, Senior Judge
United States District Court